| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| SCHEER LAW GROUP, LLP<br>JOSHUA L. SCHEER #242722<br>REILLY D. WILKINSON #250086<br>155 N. Redwood Dr., Suite 100<br>San Rafael, CA 94903<br>Telephone: (415) 491-8900<br>Facsimile: (415) 491-8910<br>rwilkinson@scheerlawgroup.com<br>File FAY.100-023S-A<br><br>☐ *Movant appearing without an attorney*<br>☒ Attorney for Movant | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>JORGE RAMIREZ | CASE NO.: 2:22-bk-11267-SK<br>CHAPTER: 13 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| Debtor(s). | DATE: 03/30/2022<br>TIME: 8:30am<br>COURTROOM: 1575 |
| **Movant:** CAM XI TRUST, its successors and/or assignees | |

1. **Hearing Location:**

   ☒ 255 East Temple Street, Los Angeles, CA 90012        ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☐ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☒ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) 03/23/2022  and (*time*) 11:59pm____; and, you may appear at the hearing.

a.  ☒ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 3/16/2022

SCHEER LAW GROUP, LLP
_____
Printed name of law firm (if applicable)

REILLY D. WILKINSON
_____
Printed name of individual Movant or attorney for Movant


/S/REILLY D. WILKINSON
_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 2                    **F 4001-1.RFS.RP.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 13805 Francisco Drive
   *Unit/suite number*:
   *City, state, zip code*: La Mirada, CA 90638

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __2__ ): Document Recording Number: 20180308194; Los Angeles County.

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on (*date*)  03/08/2022  .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

      (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

      (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☒ The bankruptcy case was filed in bad faith.

      (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (B) ☒ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

      (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

      (D) ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

      (E) ☒ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

      (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017    Page 3    **F 4001-1.RFS.RP.MOTION**

(3) ☒ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☒ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion)*

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☐ Other:

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)   ☐ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential foreebarance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☒ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  __3/16/2022__

SCHEER LAW GROUP, LLP _____
Printed name of law firm (*if applicable*)
REILLY D. WILKINSON _____
Printed name of individual Movant or attorney for Movant

/S/REILLY D. WILKINSON _____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## REAL PROPERTY DECLARATION

I, (print name of Declarant) *Lindsey Dallmer* _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

    a. ☐  I am the Movant.

    b. ☐  I am employed by Movant as (state title and capacity):

    c. ☒  Other (specify): _I am employed as a AVP BK_ by Fay Servicing, LLC as servicer of CAM XI Trust, its successors and/or assignees ("Movant").

2. a. ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b. ☐  Other (see attached):

3. The Movant is:

    a. ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit  _1___ .

    b. ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit  _2&3_ .

    c. ☐  Servicing agent authorized to act on behalf of the:

        ☐  Holder.
        ☐  Beneficiary.

    d. ☐  Other (specify):

4. a.  The address of the Property is:

    *Street address*: 13805 Francisco Drive
    *Unit/suite no.*:
    *City, state, zip code*: La Mirada, CA 90638

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
    Document Recording Number: 20180308194; Los Angeles County

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                Page 6                                **F 4001-1.RFS.RP.MOTION**

5. Type of property (*check all applicable boxes*):

   a. ☒ Debtor's principal residence      b. ☐ Other residence
   c. ☐ Multi-unit residential            d. ☐ Commercial
   e. ☐ Industrial                   f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☒ Other (*specify*): **SEE NOTE

**NOTE: Steven Kim, Cindy S. Kim, and James Chang purchased the Property at an Home owner's association ("HOA") foreclosure on October 13, 2021. Movant's lien was senior to the HOA lien and survived the foreclosure. On March 3, 2022, after the foreclosure, the former borrower under the Note and Deed of Trust, Young Joong Ko, purportedly executed a Grant Deed transferring an interest in the Property to Debtor, Jorge Ramirez. See Exhibit "4." Due to the HOA foreclosure, the former borrower did not have an ownership interest at the time of the fraudulent transfer to the Debtor.

   e. ☒ The Debtor ☐ did ☒ did not  list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.
        The deed was recorded on (*date*) 03/03/2022  .

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
    that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit  2  .

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
        attached as Exhibit  1  .

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
        trust to Movant is attached as Exhibit  3  .

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 637,500.00 |
| b. | Accrued interest: | $ | $ | $ 280,489.38 |
| c. | Late charges | $ | $ | $ 1,074.33 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 116,475.21 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 24,627.79 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[ 0.00          ] |
| g. | TOTAL CLAIM as of (*date*):  3/11/2022 | $ | $ | $ 1,060,166.71 |

   h. ☒ Loan is all due and payable because it matured on (*date*) 04/01/2019

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
has occurred*):

   a. Notice of default recorded on (*date*) 12/09/2019  or ☐ none recorded.

   b. Notice of sale recorded on (*date*) 3/12/2020  or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) 4/13/2020  or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) 3/30/2022  or ☐ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

    b. Number of payments that have come due and were not made: _____. Total amount: $_____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d. The fair market value of the Property is $_____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    **e. Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                Page 8                        **F 4001-1.RFS.RP.MOTION**

i.  ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j.  ☐ The fair market value of the Property is declining because:

12. ☒ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: 04/15/2022 .
A plan confirmation hearing currently scheduled for (or concluded on) the following date: 05/24/2022 .
A plan was confirmed on the following date *(if applicable)*: _____

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

NOTE: Movant is bringing this Motion for Relief due to the bad faith actions by the Debtor and/or his agents.

(See attachment for additional breakdown of information attached as Exhibit _____.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                                    $
*(For details of type and amount, see Exhibit _____)*

e.  Attorneys' fees and costs:                                    $
*(For details of type and amount, see Exhibit _____)*

f.  Less suspense account or partial paid balance:                     $[                              ]

TOTAL POSTPETITION DELINQUENCY:                     $

g.  Future payments due by time of anticipated hearing date *(if applicable)*: __N/A__.
An additional payment of $____N/A____ will come due on ____N/A____, and on the __N/A__ day of each month thereafter. If the payment is not received by the __N/A__ day of the month, a late charge of $____N/A____ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____N/A_____ received on *(date)* ____N/A____
$_____N/A_____ received on *(date)* ____N/A____
$_____N/A_____ received on *(date)* ____N/A____

i.  ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan *(attach LBR form F 4001-1.DEC.AGENT.TRUSTEE)*.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 9                                    **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☒ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☒ Other (*specify*): The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.


18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☒ Multiple bankruptcy cases affecting the Property include:

      1. Case name: Hye Mi Ko _____
         Chapter: 13___   Case number: 2:21-bk-15287-WB____
         Date dismissed: 08/09/2021___   Date discharged: _____   Date filed: 06/29/2021___
         Relief from stay regarding the Property ☐ was ☒ was not granted.

      2. Case name: Hye Mi Ko _____
         Chapter: 7____   Case number: 2:19-bk-22093-BB____
         Date dismissed: 11/01/2019___   Date discharged: _____   Date filed: 10/14/2019___
         Relief from stay regarding the Property ☐ was ☒ was not granted.

      3. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged: _____   Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 10                    **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3-16-22 | Lindsey Dallmer | Lindsey Dallmer |
|---|---|---|
| *Date* | *Printed name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*         Page 11         **F 4001-1.RFS.RP.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

85 Argonaut, Suite 202, Aliso Viejo, CA 92656

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below: **\*\*and Memorandum of Points and Authorities in Support of Motion for Relief and Supplemental Declaration in Support of Motion for Relief**

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _03/16/2022_ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Notice: Reilly D Wilkinson, rwilkinson@scheerlawgroup.com
Trustee: Kathy A Dockery, EFiling@LATrustee.com
U.S. Trustee: ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _03/16/2022_ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Chamber's Copy: United States Bankruptcy Court, Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582 / Courtroom 1575 Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _03/16/2022_ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor: Jorge Ramirez, 13805 Francisco Dr, La Mirada, CA 90638 (Via Overnight Mail)
Trustee: Kathy A Dockery, 801 Figueroa Street, Suite 1850, Los Angeles, CA 90017 (Via Overnight Mail)
Orignial Borrower: Young Joong Ko, 13805 Francisco Dr, La Mirada, CA 90638 (Via Overnight  Mail)
Notice: Steven Kim, 13805 Francisco Dr, La Mirada, CA 90638 (Via Overnight Mail)
Notice: Cindy S. Kim, 13805 Francisco Dr, La Mirada, CA 90638 (Via Overnight Mail)
Notice: James Chang, 13805 Francisco Dr, La Mirada, CA 90638 (Via Overnight Mail)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _03/16/2022_ | _Jennifer Meza_ | _/s/Jennifer Meza_ |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Exhibit "1"

# Note

Loan Number ███████

March 27, 2018

Address of Property(ies):

13805 Francisco Drive

La Mirada, CA 90638

## 1. Secured Note

In addition to the protections under this Note given to the Note Holder (as defined below), a Mortgage, Deed of Trust, Assignment of Rents and Fixture Filing, Security Deed or other comparable security instrument (the **"Security Instrument"**), dated the same date as this Note, protects the Note Holder from possible losses which might result if Borrower does not keep the promises which Borrower makes in this Note. All of the terms, covenants and conditions contained in the Security Instrument are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of the Security Instrument and this Note, the terms and provisions of the Security Instrument shall govern.

## 2. Property

**"Property"** means the property that the Security Instrument describes under its heading "Transfer of Rights in the Property".

## 3. Borrower's Promise to Pay

In return for a loan that Borrower has received, Borrower promises to pay US$ 637,500.00 (this amount is called **"Principal"**), plus Interest, to the order of the Lender. The **"Lender"** is Civic Financial Services, LLC, a California limited liability company. Borrower will make all payments under this Note by automatic clearing house (ACH) transfer, or any other form agreed by the parties.

Borrower understands that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the **"Note Holder"**.

## 4. Interest

Interest will be charged on unpaid principal until the full amount of Principal has been paid. Subject to adjustment pursuant to Section 8.2, Borrower will pay interest at a yearly rate of

1

8.990%.  Interest shall be computed on the basis of a 30-day month and 360-day year, provided however, as to the amount due for each of the first and final month, interest shall be computed for the actual number of days elapsed in the month over a 365 day or 366 day year, as applicable, including the first such day and the date of Note Holder's receipt of any relevant payment.

## 5.  Payments

### 5.1 Time and Place of Payments

Borrower will make a payment every month. This payment will be for interest only for 12 months (the "**Interest Only Period**"). After the Interest Only Period, Borrower will make a balloon payment that will include the principal and any outstanding interest.

Borrower will make its monthly interest payment on the 1 day of each month beginning on 05/01/2018.  Borrower will make these payments every month through the Maturity Date. On 04/01/2019 (the "**Maturity Date**"), Borrower shall pay to Lender an amount equal to the Principal, plus any outstanding interest thereon.

Borrower will make its monthly payments, without notice and without offset or deduction, at 2015 Manhattan Beach Blvd, Suite 106, Redondo Beach, CA 90278 or at a different place if required by the Note Holder.

### 5.2 Amount of Monthly Payments

Borrower's monthly payment will be in the amount of US$4,775.94 for 12 months of this Note, adjusted to reflect (a) Section 8.2, (b) Prepayments as contemplated in Section 6, and (c) any other payments in excess of interest then due, which payments Lender may apply to principal.

## 6.  Borrower's Right to Prepay

Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "**Prepayment**". When Borrower makes a Prepayment, Borrower will tell the Note Holder in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.

The Note Holder will apply a full or partial Prepayment in the following order: (i) first to any accrued and unpaid interest on the Prepayment amount, then (ii) next to reduce the amount of Principal owed under the Note.  Partial Prepayments do not affect timing or amount of monthly payments or Maturity Date.

A **Prepayment may carry a charge,** which will be calculated in accordance with the following schedule:

(a)      **For Notes with a one year term,** no minimum interest must be collected on the Principal, irrespective of when the Note is prepaid.

(b)      **For Notes with a two year term,** a minimum of eight months' interest must be collected on the Principal, irrespective of when the Note is prepaid.

(c)      **For Notes with a four year term,** a minimum of eighteen months' interest must be collected on the Principal, irrespective of when the Note is prepaid.

2

**7.  Loan Charges**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits (and for purposes of making any such determination as to whether any interest exceeds the lawful maximum, it is understood and agreed that, insofar as the law permits, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Note Holder), then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the maximum permitted limit; and (b) any sums already collected from Borrower which exceeded maximum permitted limits will be refunded to Borrower. The Note Holder may choose to make this refund by reducing the Principal Borrower owes under this Note or by making a direct payment to Borrower. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**8.  Default; Acceleration; Borrower's Failure to Pay as Required**

8.1 Default

A "**default**" means and shall occur upon:

(a)    any failure of Borrower (or any Affiliate of Borrower) to pay Note Holder (or any affiliate of Note Holder) any amount due that remains delinquent as of the next payment date hereunder;

(b)    any failure of Borrower to perform any of its other obligations under this Note that is not cured within ten (10) days following Note Holder's delivery of notice thereof;

(c)    any failure of Borrower to perform any of its obligations under any other agreement to which Borrower and Lender or Note Holder are parties; and/or,

(d)    the making or furnishing by Borrower of any warranty, representation or statement to Lender or Note Holder in connection with this Note or any other agreement to which Borrower and Lender or Note Holder are parties, which is false or misleading in any material respect when made or furnished.

"**Affiliate**" means, with respect to any person or entity, any other person or entity that Controls, is under common Control with or is Controlled by such person or entity (and "**Control**" or "**Controlling**" means possession of the direct or indirect power to direct or cause the direction of the management and policies of a person or entity).

Upon the occurrence of a default hereunder, then all amounts hereunder shall, at the option of Lender, without notice or demand except as the Security Instrument may otherwise provide, become immediately due and payable for all purposes.

8.2 Late Payment

Borrower acknowledges that the late payment of any amount payable by Borrower hereunder will cause Note Holder to incur administrative costs and other damages, the exact amount of which would be impracticable or extremely difficult to ascertain, and the late charge described below provides a reasonable estimate thereof.

Subject to Section 7 above,

3

(a) if Borrower fails to pay any amount required to be paid by Borrower hereunder on the date such payment is due (a **"delinquency"**), a late charge equal to fifteen percent (15%) of the delinquent amount will be assessed no earlier than the fifteenth day of delinquency;

(b) upon the occurrence of a default, the interest rate will increase to the lesser of: (i) eighteen percent (18%) and (ii) the maximum rate permitted by applicable law; provided that if any such default is cured on or before the date the next payment is due, subject to clause (c) below, the interest rate shall be reset to the applicable interest rate (established by Section 4) effective at the next payment date); and,

(c) if any default continues without cure beyond the next succeeding payment date (*i.e.*, the first payment date after the date on which the applicable default occurred), then Borrower shall have no right to cause the interest rate to revert to the applicable interest rate (established by Section 4), and at Lender's discretion, for the life of the loan the interest rate will remain at the lesser of: (i) eighteen percent (18%) and (ii) the maximum rate permitted by applicable law (cure of the applicable default will NOT reset the interest rate to the rate specified in Section 4).

If the Principal and any unpaid interest is not paid in full on or before the Maturity Date, the interest rate will increase to the lesser of: (a) eighteen percent (18%) and (b) the maximum rate permitted by applicable law. Such default interest is not curable and will remain in effect until the Principal and all interest is repaid in full.

8.3 No Waiver By Note Holder

Even if, at a time when Borrower is in default, the Note Holder does not require Borrower to pay immediately in full as described above, the Note Holder will still have the right to do so if Borrower is in default at a later time, as described above.

8.4 Payment of Note Holder's Costs and Expenses

If the Note Holder has required Borrower to pay immediately in full as described in Section 8.1 above, the Note Holder will have the right to be paid back by Borrower for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, attorney's fees.

9. <u>Giving of Notices</u>

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the address of Borrower specified beneath Borrower's signature below, or at a different address if Borrower gives the Note Holder a notice of Borrower's different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 5.1 above or at a different address if Borrower is given a notice of that different address.

10. <u>Obligations of Persons under This Note</u>

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any

person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of such persons together.  This means that any one of such persons may be required to pay all of the amounts owed under this Note.

**11. Waivers**

Borrower and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "**Presentment**" means the right to require the Note Holder to demand payment of amounts due. "**Notice of Dishonor**" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**12. Use of Proceeds**

BORROWER AND ANY OTHER PERSON WHO HAS OBLIGATIONS UNDER THIS NOTE WILL USE THE PROCEEDS OF THE LOAN THAT BORROWER HAS RECEIVED SOLELY FOR THE PURPOSE OF ACQUIRING OR REFINANCING, AND IF APPLICABLE, IMPROVING, REAL PROPERTY FOR INVESTMENT PURPOSES, AND BORROWER WARRANTS AND REPRESENTS TO THE NOTE HOLDER THAT ALL LOAN PROCEEDS WILL BE SOLELY USED TO ACQUIRE OR REFINANCE, AND IF APPLICABLE, IMPROVE, REAL PROPERTY FOR INVESTMENT PURPOSES, AND THAT NO LOAN PROCEEDS WILL BE USED FOR A CONSUMER, FAMILY OR HOUSEHOLD PURPOSE.

**BORROWER FURTHER WARRANTS AND REPRESENTS TO NOTE HOLDER THAT BORROWER WILL AT NO TIME DURING THE TERM OF THE LOAN INHABIT THE PROPERTY.**

**13. Intended Construction**

(a)     Borrower has declared in writing to Lender in the loan application all contemplated construction and/or renovations to the Property.  If Borrower contemplates construction and/or renovations to the Property, Borrower shall execute and deliver to Lender a completed Construction and Renovations Reserve and Disbursement Agreement, in Exhibit A attached hereto.

(b)     Borrower will obtain authorization from the loan servicer for all future construction and/or renovations requiring major construction, including, but not limited to, remodeling of the kitchen or bathroom, installation of a new roof or new windows, and additions to the property. For purposes of this paragraph, "**major construction**" is defined as any alteration to the Property that requires demolition, partial or otherwise, of the same, and reasonably expected to cost over US$10,000.

(c)     Borrower will diligence all third parties that Borrower retains in connection with any construction on, or renovation to, the Property, whether such third party be a contractor or other vendor, and Borrower will ensure that all such parties are at all times properly licensed as required under applicable law, and adequately insured and bonded.

(d)     Borrower shall obtain from all applicable governmental authorities any and all applicable building and other permits and approvals (collectively, "**Permits**") necessary or required for Borrower to commence, perform and fully complete construction and/or

renovations to the Property (and to permit the Property to be legally occupied upon completion thereof).  Borrower shall deliver a copy of all such Permits to Lender upon Lender's request therefor.

## 14. Financial Information

Any financial information Borrower provides in connection with Borrower's application for a loan, or at any point thereafter and during the term of the loan, will be prepared by, or certified by, Borrower, a certified public accountant, or other professional with comparable qualifications.

## 15. Due on Sale

Notwithstanding any provision of this Note to the contrary, if all or any part of the Property or any Interest in the Property (as defined in the Security Instrument) is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums payable under this Note in accordance with Section 3.17 of the Security Instrument.  If Lender exercises such option, Lender shall give Borrower notice of acceleration in accordance with the Security Instrument, and in such event the Maturity Date shall be deemed to occur on the date on which payment in full is so required.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

## 16. Release of Collateral

Lender is without obligation to release all or any portion of the Property from the lien of the Security Instrument unless and until all amounts due Lender from Borrower, including without limitation this Note, the Security Instrument, or any document executed in connection with this Note or the Security Instrument, have been indefeasibly paid in full.  Should Lender in its discretion choose to release any portion of the Property from the lien of the Security Instrument prior to such indefeasible payment in full, Borrower acknowledges that:  Lender may maintain such ratio as Lender deems appropriate of value of the Property remaining subject to the lien of the Security Instrument relative to Borrower's obligations to Lender; and, Lender in its assessment of the formulation of such ratio may in its discretion re-assess its valuation of the relevant Property, the expense of such re-assessment at the charge of Borrower.

## 17. Guarantee

[Reserved]

THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

By: _____ Date: _____

Name: Young Joong Ko

## ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of California

County of _Los Angeles_ )

On _March 28, 2018_ before me, _Mi X Hong, Notary Public_
(insert name and title of the officer)

Personally appeared _Young Joong Ko_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

MI HONG
COMM. # 2226920
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Jan. 10, 2022

7

Exhibit "2"

**This page is part of your document - DO NOT DISCARD**



## 20180308194



Pages:
0036

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/30/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 185.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 260.00 |



**L E A D S H E E T**





**SEQ:**
**02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E521952

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 1 of 36
Order: 2243 Comment:

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME  Civic Financial Services LLC

STREET ADDRESS
2015 Manhattan Beach Blvd. Suite 106

CITY, STATE &
ZIP CODE
Redondo Beach, CA 90278

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☑ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

Recording Requested by:
Civic Financial Services, LLC

**And After Recording Return To:**
Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278
Loan N█████████

# Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing

## 1. Definitions

Words used in multiple sections of this document are defined below and other words are defined in Sections 3.3, 3.10, 3.12, 3.17, 3.18, and 3.19. Certain rules regarding the usage of words used in this document are also provided in Section 3.15.

**"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**"Borrower"** is YOUNG JOONG KO; BORROWER'S ADDRESS IS 17502 Rosa Drew LAne #13C, Irvine, CA 92612; Borrower is the trustor under this Security Instrument.

**"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfer initiated by telephone, wire transfers, and automated clearinghouse transfers.

**"Escrow Items"** means those items that are described in Section 3.3.

**"Lender"** is CIVIC FINANCIAL SERVICES, LLC; Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of CALIFORNIA; Lender's address is 2015 MANHATTAN BEACH BLVD STE 106, REDONDO BEACH, CALIFORNIA 90278; Lender is the beneficiary under this Security Instrument.

"**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

"**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverage described in Section 3.5.) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

"**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

"**Note**" means the promissory note signed by Borrower and dated  March 27, 2018.  The Note states that Borrower owes Lender Six Hundred Thirty-Seven Thousand Five Hundred Dollars and Zero Cents Dollars (US$637,500.00) plus interest; Borrower has promised to pay interest on this debt in regular Periodic Payments and to pay the debt in full not later than April 01, 2019.

"**Periodic Payment**" means the regularly scheduled amount due for (i) interest under the Note, plus (ii) any amounts payable under Section 3.3 of this Security Instrument.

"**Property**" means the property that is described below under the heading "Transfer of Rights in the Property".

"**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

"**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:

[] Condominium Rider                     [X] Planned Unit Development Rider
[] Revocable Trust Rider                 [] Other:
[] Other:                                [] Other:

"**Security Instrument**" means this document, which is dated  March 27, 2018 together with all Riders to this document.

"**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

"**Trustee**" is PROVIDENT TITLE COMPANY
          13245 RIVERSIDE DR. #450, Sherman Oaks, Los Angeles 91423

**2.  Transfer of Rights in the Property**
This Security Instrument secures to Lender:

2300-1002 / 501712 10                        2

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 4 of 36
Order: 2243 Comment:

(a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and,

(b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

STATE: CA

| Type of Recording Jurisdiction | Name of Recording Jurisdiction | A.P.N. |
|---|---|---|
| County | Los Angeles | 8037-057-014 |

Which currently has the address of: 13805 Francisco Drive, La Mirada, CA 90638

more fully described by the legal description attached as Exhibit A.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the **"Property"**.

BORROWER REPRESENTS, WARRANTS AND COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**3. Uniform Covenants**

Borrower and Lender covenant and agree as follows:

**3.1 Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**
Borrower shall pay when due the Principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 5 of 36
Order: 2243 Comment:

such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 3.14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but except as required by Applicable Law, Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**3.2 Application of Payments or Proceeds**
Except as otherwise described in this Section 3.2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.3 Funds for Escrow Items**
Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "**Funds**") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 3.5; and (d)

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 6 of 36
Order: 2243 Comment:

Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 3.9. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and if so required, such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3.3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 3.8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 3.8 and pay such amount and Borrower shall then be obligated under Section 3.8 to repay to Lender any such amount so paid by Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 3.14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.3. Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 7 of 36
Order: 2243 Comment:

Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

### 3.4 Charges; Liens

Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 3.4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

### 3.5 Property Insurance

Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a onetime charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 8 of 36
Order: 2243 Comment:

to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained by Lender might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3.5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, to the extent permitted by Applicable Law, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 3.2.

If Borrower fails to do so in a timely manner, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 5.1 or otherwise, Borrower hereby assigns to

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 9 of 36
Order: 2243 Comment:

Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

### 3.6 Preservation, Maintenance and Protection of the Property; Inspections

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or permit waste to be committed on the Property. Notwithstanding the fact that Borrower is not residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 3.5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

### 3.7 Borrower's Loan Application

Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning the ABSENCE OF ANY OCCUPANCY OR USE OF THE PROPERTY AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER.

### 3.8 Protection of Lender's Interest in the Property and Rights Under this Security Instrument

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has permitted the Property to remain vacant, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in

2300-1002 / 501712.10

8

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 10 of 36
Order: 2243 Comment:

court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 3.8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 3.8.

Any amounts disbursed by Lender under this Section 3.8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement, and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground or master lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

### 3.9 Mortgage Insurance

(a)   If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect, and Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. To the fullest extent permitted by Applicable Law, such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 11 of 36
Order: 2243 Comment:

accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 3.9 affects Borrower's obligation to pay interest at the rate provided in the Note.

(b)    Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

(c)    Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

(d)    As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance". Further:

(1)    **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(2)    **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**3.10 Assignment of Miscellaneous Proceeds; Forfeiture**

(a)    To the fullest extent permitted by Applicable Law, all Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

(b)    If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. To the fullest

*Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 12 of 36*
*Order: 2243 Comment:*

extent permitted by Applicable Law, Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, then to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 3.2.

(c)   In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(d)   In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

(e)   In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

(f)   If Borrower fails to pursue recovery of Miscellaneous Proceeds in a diligent manner, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

(g)   Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 13 of 36
Order: 2243 Comment:

Instrument. Borrower can cure such a default if acceleration has not occurred by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

(h)    All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 3.2.

**3.11 Borrower Not Released; Forbearance By Lender Not a Waiver**
Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**3.12 Joint and Several Liability; Co-signers; Successors and Assigns Bound**
Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"):

(a)    is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument;

(b)    is not personally obligated to pay the sums secured by this Security Instrument; and

(c)    agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this security instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 3.17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 3.18) and benefit the successors and assigns of Lender.

**3.13 Loan Charges**
Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, Property inspection and

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 14 of 36
Order: 2243 Comment:

valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits (and for purposes of making any such determination as to whether any interest exceeds the lawful maximum, it is understood and agreed that all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender), then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**3.14 Notices**
All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the address designated in the Note unless Borrower has designated a substitute notice address by no less than ten (10) days prior notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**3.15 Governing Law; Severability; Rules of Construction**
This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law,

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 15 of 36
Order: 2243 Comment:

such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument:

(a)    words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender;

(b)    words in the singular shall mean and include the plural and vice versa; and

(c)    the word "may" gives sole discretion without any obligation to take any action.

### 3.16 Borrower's Copy

Borrower shall be given one copy of the Note and of this Security Instrument.

### 3.17 Transfer of the Property or a Beneficial Interest in Borrower

As used in this Section 3.17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 3.14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### 3.18 Sale of Note; Change of Loan Servicer; Notice of Grievance

The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 16 of 36
Order: 2243 Comment:

pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 3.14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 5.1 and the notice of acceleration given to Borrower pursuant to Section 3.17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 3.18.

**3.19 Hazardous Substances**

As used in this Section 3.19: (a) "**Hazardous Substances**" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "**Environmental Law**" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "**Environmental Cleanup**" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "**Environmental Condition**" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**3.20 Additional Property Subject to the Security Instrument**

2300-1003 / 501712 10

15

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 17 of 36
Order: 2243 Comment:

In addition to the Property elsewhere herein described, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.

**3.21 Use of Property; Compliance with Law**
Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**3.22 Subordinate Liens**
Except as permitted by Applicable Law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**3.23 Rent Loss Insurance**
Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 3.5.

**3.24 Assignment of Leases**
Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this Section 3.24, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**3.25 Assignment of Rents; Appointment of Receiver; Lender in Possession**
Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 5.1 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 18 of 36
Order: 2243 Comment:

Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 3.8.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

### 3.26 Security Agreement

This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property. By executing and delivering this Security Instrument, Borrower hereby grants to Lender and Trustee, as security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other loan documents, a security interest in the items described in Section 3.20 above to the fullest extent that such items may be subject to the Uniform Commercial Code.

### 3.27 Pledge of Monies Held

Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender, including, without limitation, any sums deposited in the escrow as provided in Section 3.3 above, insurance proceeds as provided in Section 3.5 above and Miscellaneous Proceeds as provided in Section 3.10 above, as additional security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other loan documents, until expended or applied as provided in this Security Instrument.

### 3.28 Cross-Default Provision

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 19 of 36
Order: 2243 Comment:

Any breach or default by Borrower or any Affiliate of Borrower under any note or agreement to which Lender or any Affiliate of Lender is also a party (or has an interest) shall be a breach under this Security Instrument, and Lender may invoke any of the remedies permitted by this Security Instrument.

### 4. Balloon Payment Covenant

Borrower and Lender further covenant and agree as follows:

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER WITH WHICH BORROWER HAS THIS LOAN, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

### 5. Non-Uniform Covenants

Borrower and Lender further covenant and agree as follows:

### 5.1 Acceleration; Remedies

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 3.17 unless Applicable Law provides otherwise) or in the Note. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand, and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 5.1, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 20 of 36
Order: 2243 Comment:

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

This Section 5.1 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

### 5.2 Reconveyance

Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

This Section 5.2 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

### 5.3 Substitute Trustee

Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

### 5.4 Statement of Obligation Fee

Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

### 5.5 Use of Property

BORROWER WILL AT NO TIME DURING THE TERM OF THE LOAN INHABIT THE PROPERTY. THE PROPERTY IS OWNED AND HELD BY BORROWER AS AN INVESTMENT PROPERTY. NONE OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER NOW OCCUPIES OR USES THE PROPERTY, AND NONE OF THEM HAS ANY PRESENT INTENTION TO OCCUPY OR USE THE PROPERTY IN THE FUTURE AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER. EACH OF BORROWER AND ITS OWNERS, EMPLOYEES AND OTHER AFFILIATES NOW OCCUPIES AND USES

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 21 of 36
Order: 2243 Comment:

OTHER PROPERTY OR PROPERTIES AS SUCH PERSON'S PRINCIPAL OFFICE, RESIDENCE AND/OR SECOND HOME.

**6. State Specific Provisions-California**

The representations, warranties and covenants in this Section 6 shall be continuing representations, warranties and covenants that shall be deemed to be made by Borrower throughout the term of the Loan, until paid in full.

(a) The notice of acceleration pursuant to Section 5.1 shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(b) In addition to the provisions of the Note, Borrower further agrees that, if Lender accepts a Guarantee of only a portion of the Loan, Borrower waives its right under California Civil Code Section 2822(a) to designate the portion of the Loan which shall be satisfied by a guarantor's partial payment.

(c) Except for matters covered by a duly established and implemented O&M Plan in respect of asbestos-containing materials, Borrower shall not cause or permit any lien (whether or not such lien has priority over the lien created by this Security Instrument) upon the Property imposed pursuant to any Environmental Laws.

(d) Borrower represents and warrants to Lender that, except as previously disclosed by Borrower to Lender in writing;

   (1) at the time of acquiring the Property, Borrower undertook all appropriate inquiry into the previous ownership and uses of the Property consistent with good commercial or customary practice and no evidence or indication came to light which would suggest that the Property is subject to any Environmental Condition or Environmental Cleanup; and

   (2) at least one of the following is true: (A) the Property is not located within 2,000 feet of a significant disposal of Hazardous Substances; or (B) if the Property is located within 2,000 feet of a significant disposal of Hazardous Substances, such Hazardous Substances do not constitute a significant existing or potential hazard to present or future public health or safety on the Property. In any case, Borrower agrees to immediately disclose to Lender any significant disposal of Hazardous Substances that occurs or exists within 2,000 feet of the Mortgaged Property.

(e) Without limiting any of the remedies provided in this Security Instrument, Borrower acknowledges and agrees that each of the provisions in this Section 6 is an environmental provision (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Borrower relating to real property security (the "**Environmental Provisions**"), and that to the extent applicable, Borrower's failure to comply with any of the Environmental Provisions will be a breach of contract that will entitle Lender to pursue the remedies provided by Section 736 of the California Code of Civil Procedure for the recovery of damages and for the enforcement of the Environmental Provisions.

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 22 of 36
Order: 2243 Comment:

(f) **Remedies Not Exclusive; Waiver.** Trustee and Lender shall have all powers, rights and remedies under Applicable Law whether or not specifically or generally granted or described in this Security Instrument. Nothing contained herein shall be construed to impair or to restrict such powers, rights and remedies or to preclude any procedures or process otherwise available to trustees or beneficiaries under deeds of trust in the State of California. Trustee and Lender, and each of them, shall be entitled to enforce the payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Security Instrument or other agreement or any laws now or hereafter in force, notwithstanding the fact that some or all of the indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Security Instrument nor its enforcement, whether by court action or pursuant to the power of sale or other powers contained herein, shall prejudice or in any manner affect Trustee's or Lender's right to realize upon or enforce any other rights or security now or hereafter held by Trustee or Lender. Trustee and Lender, and each of them, shall be entitled to enforce this Security Instrument and any other rights or security now or hereafter held by Lender or Trustee in such order and manner as they or either of them may in their absolute discretion determine. No remedy herein conferred upon or reserved to Trustee or Lender is intended to be exclusive of any other remedy contained herein or by law provided or permitted, but each shall be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Every power or remedy given by any of this Security Instrument to Trustee or Lender, or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Lender, and either of them may pursue inconsistent remedies. By exercising or by failing to exercise any right, option or election hereunder, Lender shall not be deemed to have waived any provision hereof or to have released Borrower from any of the obligations secured hereby unless such waiver or release is in writing and signed by Lender. The waiver by Lender of Borrower's failure to perform or observe any term, covenant or condition referred to or contained herein to be performed or observed by Borrower shall not be deemed to be a waiver of such term, covenant or condition or of any subsequent failure of Borrower to perform or observe the same or any other such term, covenant or condition referred to or contained herein, and no custom or practice which may develop between Borrower and Lender during the term hereof shall be deemed a waiver of or in any way affect the right of Lender to insist upon the performance by Borrower of the obligations secured hereby in strict accordance with the terms hereof.

(g) **Power of Sale**

(1) Should Lender elect to foreclose by exercise of the power of sale contained herein, Lender shall notify Trustee and shall, if required, deposit with Trustee the Note, the original or a certified copy of this Security Instrument, and such other documents, receipts and evidences of expenditures made and secured hereby as Trustee may require. Upon receipt of such notice from Lender, Trustee shall cause to be recorded and delivered to Borrower such notice as may then be required by law and

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 23 of 36
Order: 2243 Comment:

by this Security Instrument. Trustee shall, without demand on Borrower, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to the purchaser or purchasers at such sale its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Borrower, Trustee or Lender, may purchase at such sale, and Borrower hereby covenants to warrant and defend the title of such purchaser or purchasers.

(2) After deducting all costs, fees and expenses of Trustee and of this Security Instrument, including, without limitation, costs of evidence of title and actual and customary attorneys' fees of Trustee or Lender in connection with a sale as provided in subparagraph (1) above, Trustee shall apply the proceeds of such sale (a) first, to the payment of all sums expended by Lender under the terms of this Security Instrument and not yet repaid, together with interest on such sums at the rate of interest set forth in Section 6.1 of the Note, (b) second, to the payment of all sums expended under the terms hereof not then repaid, with accrued interest at the rate of interest equal to the rate then in effect under the Note, or if the Note has been repaid, the rate that would have been in effect under the Note, (c) third, to the payment of all other sums then secured hereby, and (d) fourth, the remainder, if any, to the person or persons legally entitled thereto.

(h) **Right of Rescission.** Lender may from time to time rescind any notice of default or notice of sale before any Trustee's sale in accordance with the laws of the State of California. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default to satisfy the obligations of this Security Instrument or secured hereby, nor otherwise affect any provision, covenant or condition of this Security Instrument or any of the rights, obligations or remedies of Trustee or Lender hereunder or thereunder.

(i) **Full Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder. The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(j) **Fixture Filing.** This Security Instrument constitutes a fixture filing under the fixture filing provisions of the UCC, Sections 9-313 and 9-402(6) as enacted and under the equivalent

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 24 of 36
Order: 2243 Comment:

statutes in the State of California, as amended or recodified from time to time. For purposes of the fixture filing, the "debtor" is the Borrower which has as its principal place of business the address listed in the first paragraph of this Security Instrument and the "Secured Party" is Lender.

(k) **Border Zone Property.** Borrower represents and warrants that the Property has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that is reasonably likely to cause the Property or any part thereof to be designated as Border Zone Property.

(l) JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY, NOTWITHSTANDING SECTION 8.2(f) BELOW TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS, HIS OR HER BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

**7 Obligations and Reliance; Further Assurances**

**7.1 Obligations and Reliance**

(a) **Relationship of Borrower and Lender.** The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Note, this Security Instrument and the other loan documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

(b) **No Reliance on Lender.** The members, general partners, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 25 of 36
Order: 2243 Comment:

properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

(c)   **No Lender Obligations.** By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the other loan documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

(d)   **Reliance.** Borrower recognizes and acknowledges that in accepting the Note, this Security Instrument and the other loan documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations made by Borrower herein and therein without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof; that the warranties and representations are a material inducement to Lender in accepting the Note, this Security Instrument and the other loan documents; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth herein and therein.

**7.2 Further Assurances**

(a)   **Recording of Security Instrument, etc.** Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other loan documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other loan documents, any note or deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 26 of 36
Order: 2243 Comment:

(b)   **Further Acts, etc.**  Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender and Trustee the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Applicable Law.  Borrower, on demand, will execute and deliver and hereby authorizes Lender, following 10 days' notice to Borrower, to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including, without limitation, initial financing statements, amendments thereto and continuation statements) with or without the signature of Borrower as authorized by Applicable Law, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Property. Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Security Instrument.  Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender pursuant to this Section 7.2(b). To the extent not prohibited by Applicable Law, Borrower hereby ratifies all acts Lender has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

(c)   **Changes in Tax, Debt Credit and Documentary Stamp Laws**

(1)   If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any.  If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

(2)   Borrower will not claim or demand or be entitled to any credit or credits on account of the debt for any part of the taxes or other charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the debt.  If such claim, credit or deduction shall be required by law, Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 27 of 36
Order: 2243 Comment:

(3)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other loan documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

(d)     **Replacement Documents.** Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other loan document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other loan document, Borrower will issue, in lieu thereof, a replacement Note or other loan document, dated the date of such lost, stolen, destroyed or mutilated Note or other loan document in the same principal amount thereof and otherwise of like tenor.

## 8 Indemnification; Waivers

### 8.1 Indemnification

(a)     **General Indemnification.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (defined below) from and against any and all Losses (defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (b) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (d) any failure of the Property to be in compliance with any Applicable Law; (e) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; or (f) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the Loan evidenced by the Note and secured by this Security Instrument. Any amounts payable to Lender by reason of the application of this Section 8.1(a) shall become immediately due and payable and shall bear interest at the default rate from the date loss or damage is sustained by Lender until paid.

(b)     The term **"Losses"** shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense). The term **"Indemnified Parties"** shall mean (a) Lender, (b) any prior owner or holder of the Note, (c) any servicer or prior servicer of the Loan, (d) the officers, directors, shareholders, partners, members, employees and trustees of any of the foregoing, and (e) the heirs, legal representatives, successors and assigns of each of the foregoing.

26

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 28 of 36
Order: 2243 Comment:

(c) **Mortgage and/or Intangible Tax.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other loan documents.

(d) **Duty to Defend; Attorneys' Fees and Other Fees and Expenses.** Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding. Upon demand, Borrower shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

**8.2 Waivers**

(a) **Waiver of Counterclaim.** Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Note, any of the loan documents, or any of Borrower's obligations thereunder.

(b) **Marshalling and Other Matters.** To the extent permitted by law, Borrower hereby expressly waives:

(1) the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein; and,

(2) any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by Applicable Law.

(c) **Waiver of Notice.** Borrower shall not be entitled to any notices of any nature whatsoever from Lender or Trustee except (a) with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender or Trustee to Borrower and (b) with respect to matters for which Lender or Trustee is required by Applicable Law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender or Trustee with respect to any matter for which

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 29 of 36
Order: 2243 Comment:

this Security Instrument does not specifically and expressly provide for the giving of notice by Lender or Trustee to Borrower.

(d) **Waiver of Statute of Limitations.** Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the debt or performance of its other obligations under this Security Instrument, the Note and the other loan documents.

(e) **Sole Discretion of Lender.** Wherever pursuant to this Security Instrument (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

(f) **WAIVER OF RIGHT TO TRIAL BY JURY.** BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

## 9 Miscellaneous Provisions

### 9.1 No Oral Change

This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

### 9.2 Liability

If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

### 9.3 Inapplicable Provisions

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 30 of 36
Order: 2243 Comment:

If any term, covenant or condition of the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Note and this Security Instrument shall be construed without such provision.

**9.4 Duplicate Originals; Counterparts**

This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Security Instrument. The failure of any party hereto to execute this Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 31 of 36
Order: 2243 Comment:

By: _____ Date: 3/28/18
Name: Young Joong Ko

## ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of California

County of _Los Angeles_____ )

On _March 28, 2018_ before me, _Mi Hong, Notary Public_
                                    (insert name and title of the officer)

Personally appeared _Young Joong Ko_____, who proved

to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____    (Seal)

MI HONG
COMM. # 2226920
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. JAN. 10, 2022

2300-1002 / 501713.10

30

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 32 of 36
Order: 2243 Comment:

# Planned Unit Development Rider

Loan Number ████████

THIS PLANNED UNIT DEVELOPMENT RIDER is made on  March 27, 2018 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "**Security Instrument**") of the same date, given by the undersigned (the "**Borrower**") to secure Borrower's Note to CIVIC FINANCIAL SERVICES, LLC (the "**Lender**") of the same date and covering the Property described in the Security Instrument and located at:

13805 Francisco Drive, La Mirada, CA 90638

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "**Declaration**"). The Property is a part of a planned unit development known as

Hawks Point

(the "**PUD**"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "**Owners Association**") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

(1) <u>PUD Obligations</u>. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "**Constituent Documents**" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any similar or equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

(2) <u>Property Insurance</u>. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3.3 of the Security Instrument for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 3.5 of the Security Instrument to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

1

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 33 of 36
Order: 2243 Comment:

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the Owners Association's master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due with the excess, if any, paid to Borrower.

(3) <u>Public Liability Insurance.</u> Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

(4) <u>Condemnation.</u> The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 3.10 of the Security Instrument.

(5) <u>Lender's Prior Consent.</u> Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self- management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

(6) <u>Remedies.</u> If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph (6) shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

By: _____ Date: 3/20/18

Name: Young Joong Ko

3

**Exhibit A**
**Legal Description**

Loan Number ████████

PARCEL 1:

LOT 37 OF TRACT NO. 52721, IN THE CITY OF LA MIRADA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1264 PAGE(S) 71 THROUGH 84 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, WHERE THEY HAVE BEEN PREVIOUSLY RESERVED IN INSTRUMENTS OF RECORD.

PARCEL 2:

NONEXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, ENCROACHMENT, MAINTENANCE, REPAIR, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN ON THE MAP, AND AS DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR HAWKS POINTE (WITH ANY AMENDMENTS, THE "DECLARATION"), RECORDED JULY 23, 2002, AS INSTRUMENT NO. 2002-1710134, AND THE NOTICE OF ADDITION OF TERRITORY AND SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS (PHASE 5) (WITH ANY AMENDMENTS, THE "NOTICE"), RECORDED ON JULY 29, 2002, AS INSTRUMENT NO. 2002-1769552, BOTH IN THE OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIFORNIA.

APN: 8037-057-014          13805 Francisco Drive, La Mirada, CA 90638

Description: Los Angeles,CA Document - Year.DocID 2018.308194 Page: 36 of 36
Order: 2243 Comment:

Exhibit "3"



**This page is part of your document - DO NOT DISCARD**



## 20180381344



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/19/18 AT 03:12PM**

| | |
|---|---:|
| FEES: | 26.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 101.00 |



**L E A D S H E E T**





**SEQ:**
**01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E497026

Description: Los Angeles,CA Document - Year.DocID 2018.381344 Page: 1 of 4
Order: 2243 Comment:

**Recording Requested by**:
Civic Financial Services, LLC

**And After Recording Return To:**
Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA  90278
Loan No ███████████

# Assignment of Deed of Trust

Loan Numb ███████████

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

Civic Holdings III Trust

all its rights, title and interest in and to the Deed of Trust dated  03/27/2018  executed by YOUNG
JOONG KO , and recorded either concurrently herewith; or on  03/30/2018  as Instrument No. in
20180308194  book,   page, in the Official Records in the County Recorder's office of Los Angeles
County, CA, describing land therein as:
PARCEL 1:
LOT 37 OF TRACT NO. 52721, IN THE CITY OF LA MIRADA, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 1264 PAGE(S) 71 THROUGH 84 INCLUSIVE OF MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING
BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF
SURFACE ENTRY, WHERE THEY HAVE BEEN PREVIOUSLY RESERVED IN INSTRUMENTS OF RECORD.
PARCEL 2:
NONEXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, ENCROACHMENT, MAINTENANCE, REPAIR,
AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN ON THE MAP, AND AS DESCRIBED IN THE
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS
FOR HAWKS POINTE (WITH ANY AMENDMENTS, THE "DECLARATION"), RECORDED JULY 23, 2002, AS
INSTRUMENT NO. 2002-1710134, AND THE NOTICE OF ADDITION OF TERRITORY AND
SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS (PHASE 5) (WITH
ANY AMENDMENTS, THE "NOTICE"), RECORDED ON JULY 29, 2002, AS INSTRUMENT NO.
2002-1769552, BOTH IN THE OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIFORNIA.

A.P.N.: 8037-057-014
TOGETHER with the note or notes therein described or referred to, the money due and to become
due thereon with interest, and all rights accrued or to accrue under said Deed of Trust. The original
principal amount due under this note(s) is $637,500.00.

1

Civic Financial Services, LLC, a California Limited Liability Company

By: _____

Name:    James Helfrich

Title:    AUTHORIZED AGENT

---

### ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of California

On _____ before me, _____
                                         (insert name and title of the officer)

Personally appeared _____
who proved

to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**See Attached**

Signature _____    (Seal)

3

## ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of ____ . __Los Angeles_____ )

On __03/28/2018_____ before me, __Elizabeth Navas, Notary Public_____
                                                    (insert name and title of the officer)

personally appeared __James Helfrich_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

ELIZABETH NAVAS
Notary Public – California
Los Angeles County
Commission # 2209652
My Comm. Expires Jun 3, 2021

Signature _____ (Seal)



**This page is part of your document - DO NOT DISCARD**



## 20180699016



**Pages:**
**0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**07/12/18 AT 03:58PM**

| | |
|---|---|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |



**L E A D S H E E T**





**SEQ:
01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E443318

Description: Los Angeles,CA Document - Year.DocID 2018.699016 Page: 1 of 2
Order: 2243 Comment:

Document prepared by:  Laura Collins
Record and return to: HMC Assets, LLC
2015 Manhattan Beach Suite 200
Redondo Beach, CA 90278
Reference ███████████
APN: 8037-037-014

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned hereby grants, assigns and transfers to
     ABS Loan Trust IV, US Bank Trust National Association, as Trustee
all beneficial interest under that certain DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING dated 03/27/2018 executed by YOUNG JOONG KO,
Borrower(s), to Civic Financial Services, LLC, as Originating Lender, recorded on 03/30/2018 as DOC #
20180308194 of Official Records in the office of the County Recorder of  ✳  County, State of CA
(hereinafter, the "DEED OF TRUST"), together with the Promissory Note secured by said DEED OF TRUST
and also all rights accrued or to accrue under said DEED OF TRUST and Promissory Note.

Property Address: 13805 Francisco Drive, La Mirada, CA 90638

Dated: July 5, 2018

✳ Los Angeles                             Civic Holdings III Trust
                                          By: HMC Assets, LLC as Administrator

                                          _____
                                          By: Aaron Wright, Authorized Agent

_____

A notary public or other officer completing this certificate verifies only the identity of the individual who
signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of
that document.

_____

State of       California            ) ss
County of      Los Angeles           )

On July 5, 2018, before me, P.M. Chastain, Notary Public, personally appeared Aaron Wright, who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

```
P. M. CHASTAIN
Commission # 2097847
Notary Public - California
Orange County
My Comm. Expires Feb 20, 2019
```

Page 1 of 1

Description: Los Angeles,CA Document - Year.DocID 2018.699016 Page: 2 of 2
Order: 2243 Comment:

**This page is part of your document - DO NOT DISCARD**



## 20181217599



**Pages:**
**0002**



**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/03/18 AT 12:27PM**

| | |
|---|---:|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |



**L E A D S H E E T**



**SEQ:**
**01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E441968

Document prepared by: P. Chastain
Recording requested by and
When recorded, please return to:
HMC Assets, LLC
2015 Manhattan Beach Blvd., Suite 200
Redondo Beach, CA 90278
Reference ████████████
Sv ████████████
APN: 8037-057-014

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned hereby grants, assigns and transfers to

### Civic Holdings III Trust

all beneficial interest under that certain Deed of Trust dated 03/27/2018 executed by YOUNG JOON KO, Trustor(s), to Civic Financial Services, LLC, as Beneficiary, recorded on 03/30/2018, as Document No. 20180308194 of Official Records in the office of the County Recorder of Los Angeles County, State of California (hereinafter, the "Deed of Trust"), together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust and Promissory Note.

Property Address: 13805 Francisco Drive, La Mirada, CA 90638
Dated: 11/28/2018

ABS Loan Trust IV, US Bank Trust National
Association, as Trustee

By: _____
Title: Sean Duffy
Authorized Signatory

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of _New York_            ) ss
County of _New York_         )

On _11/28/2018_ before me, _James E Spencer_, Notary Public, personally appeared _Sean Duffy_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

My Commission Expires
July 24, 2021

JAMES ELLIS SPENCER
NOTARY PUBLIC
REG #: SP0962125
MY COMMISSION EXPIRES
JULY 24 202_
STATE OF NEW YORK



**This page is part of your document - DO NOT DISCARD**



## 20210127114



**Pages:
0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/25/21 AT 08:00AM**

| | |
|---|---|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |



**L E A D S H E E T**





**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E442318

**FOR REFERENCE ONLY: 20210127114**

Document prepared by: Laura Collins
Record and return to: HMC Assets, LLC
2015 N Manhattan Beach Blvd
Redondo Beach, CA 90278
Reference I▮
APN ID: 803̄7-057-014

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned hereby grants, assigns and transfers to

**CAM XI Trust**

all beneficial interest under that certain DEED OF TRUST dated 03/27/2018 executed by YOUNG JOONG KO, Borrower(s), to Civic Financial Services, LLC, as Originating Lender, recorded on 03/30/2018 as Doc # 20180308194 of Official Records in the office of the County Recorder of Los Angeles County, State of CA (hereinafter, the "DEED OF TRUST"), together with the Promissory Note secured by said DEED OF TRUST and also all rights accrued or to accrue under said DEED OF TRUST and Promissory Note.

Property Address: 13805 Francisco Drive, La Mirada, CA 90638

Dated : January 22, 2021

Civic Holdings III Trust
By: HMC Assets, LLC, as Administrator

By: Vincent Ciardullo, Authorized Agent

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of          California          ) ss
County of        Los Angeles        )

On January 22, 2021, before me, **Rachel L. Rios**, Notary Public, personally appeared Vincent Ciardullo, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

RACHEL L. RIOS
Notary Public - California
Los Angeles County
Commission # 2338569
My Comm. Expires Nov 24, 2024

*Rachel L. Rios, Notary Public*

Exhibit "4"

RECORDING REQUESTED BY

Jorge Ramirez

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE
SHOWN BELOW, MAIL TAX STATEMENT TO:

Name    Jorge Ramirez

Street
Address   13805 Francisco Dr.

City &
State   La Mirada, CA 90638
Zip

Title Order No. _____   Escrow No. _____

COPY of Document Recorded

03/03/2022

|||||||||||||||||||||
*20220087358*

Has Orig...ssing
has ...ER
LOS...

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Grant Deed

APN: 8037-043-057

THE UNDERSIGNED GRANTOR (S) DECLARE (S)
DOCUMENTARY TRANSFER TAX IS $ 00.00
☐ unincorporated area    City of_____
☒ computed on full value of interest or property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and

FOR A VALUABLE CONSIDERATION,  receipt of which is hereby acknowledged,

Young Joong Ko

hereby GRANT(S) to
Young Joong Ko and Jorge Ramirez as joint tenants

the following described real property in the La Mirada

County of  Los Angeles                    , state of California
Legal Discription atached hereto and identified as Exhibit "A"
Property is commonly Known as 13805 Francisco Dr, La Mirada, CA 90638

Dated March 3, 2022

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF  Los Angeles

On  03-03-2022                before me,  Steve Chang
                                                        (here insert name and title of the officer)

,notary public, personally appeared  Young Joong Ko
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the state of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature  Steve Chang

STEVE CHANG
Notary Public - California
Los Angeles County
Commission # 2348502
My Comm. Expires Feb 23, 2025

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

# EXHIBIT "A"

## LEGAL DESCRIPTION

PARCEL 1:

LOT 37 OF TRACT NO. 52721, IN THE CITY OF LA MIRADA, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER PLAT RECORDED IN BOOK 1264 OF MAPS, PAGES 71 THROUGH 84 INCLUSIVE,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND AMENDED BY A CERTIFICATE OF
CORRECTION RECORDED MAY 4, 2004 AS INSTRUMENT NO. 04-1118136 OFFICIAL RECORDS.

EXCEPTING THEREFROM, ALL MINERALS, OIL, GAS, PETROLEUM, NAPHTHA AND OTHER HYDROCARBON
SUBSTANCES LYING MORE THAN 500 FEET BELOW THE SURFACE OF THE LAND, AS RESERVED IN
DEEDS OF RECORD.

PARCEL 2:

NONEXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, ENCROACHMENT, MAINTENANCE, REPAIR, AND
FOR OTHER PURPOSES, ALL AS MAY BE SHOWN ON THE MAP, AND AS DESCRIBED IN THE
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS
FOR HAWKS POINTE (WITH ANY AMENDMENTS, THE "DECLARATION"), RECORDED JULY 23, 2002, AS
INSTRUMENT NO. 2002-1710134, AND THE NOTICE OF ADDITION OF TERRITORY AND SUPPLEMENTAL
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS (PHASE 5) (WITH ANY AMENDMENTS,
THE "NOTICE"), RECORDED ON JULY 29, 2002, AS INSTRUMENT NO. 2002-1769552, BOTH IN THE
OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIFORNIA.

PLEGAL -03/23/02RX